IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE

JOSHUA G. ROHRER,

    Plaintiff,

v.                                           CIVIL ACTION NO.: 3:23-CV-396 (GROH)

CITY OF GASTONIA, et al.,

    Defendants.

## ORDER OVERRULING IN PART AND SUSTAINING IN PART OBJECTIONS; ADOPTING MEMORANDUM AND RECOMMENDATION; GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; AND DENYING PLAINTIFF'S REQUEST FOR A STATUS CONFERENCE

Now before the Court is a Memorandum and Recommendation ("M&R") filed by United States Magistrate Judge Susan C. Rodriguez on August 26, 2024. ECF No. 25. Therein, Magistrate Judge Rodriguez recommends the Defendants' Partial Motion to Dismiss [ECF No. 15] be granted in part and denied in part. Id. at 31. The Defendants filed objections to the M&R, and the Plaintiff submitted a response to those objections. ECF Nos. 27, 28. In light of the recent reassignment of this case, the Plaintiff also entered a request for a status conference that the Defendants oppose. ECF Nos. 29, 30. For the below reasons, the Defendants' objections to the M&R are overruled in part and sustained in part; the M&R is adopted; the Defendants' Partial Motion to Dismiss is granted in part and denied in part; and the Plaintiff's request for a status conference is denied.

# I. LEGAL STANDARDS

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. Thomas v. Arn, 474 U.S. 140, 150 (1985).

"When a party does make objections, but the[] objections are so general or conclusory that they fail to direct the district court to any specific error by the magistrate judge, *de novo* review is unnecessary." Green v. Rubenstein, 644 F. Supp. 2d 723, 730 (S.D. W. Va. 2009) (citing Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982)). "When only a general objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a clear error review." Williams v. N.Y. State Div. of Parole, 2012 WL 2873569, at *2 (N.D.N.Y. July 12, 2012).

Courts have also held that when a party's objection lacks adequate specificity, the party waives that objection. See Mario v. P & C Food Markets, Inc., 313 F.3d 758, 766 (2d Cir. 2002) (finding that even though a party filed objections to the magistrate judge's M&R, they were not specific enough to preserve the claim for review). Objections must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." Osmon v. United States, 66 F.4th 144, 146 (4th Cir. 2023) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)). While "[d]istrict courts are not expected to relitigate entire cases to determine the basis of a litigant's

2

Case 3:23-cv-00396-GMG-SCR    Document 31    Filed 07/28/25    Page 2 of 14

objections[,] . . . [i]f the grounds for objection are clear, district court judges must consider them *de novo*, or else run afoul of both § 636(b)(1) and Article III [of the U.S. Constitution]." Elijah v. Dunbar, 66 F.4th 454, 460 (4th Cir. 2023).

Finally, the Fourth Circuit has long held, "[a]bsent objection, [no] explanation need be given for adopting [an M&R]." Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983) (finding that without an objection, no explanation whatsoever is required of the district court when adopting an M&R).

## II. DISCUSSION

First, the Court finds Magistrate Judge Rodriguez accurately and thoroughly summarizes the background of this case in her M&R. ECF No. 25 at 1–8. In the interest of brevity, the Court incorporates that background herein.[1]

As noted above, the M&R recommends the Defendants' Motion be granted in part and denied in part. Id. at 31. Specifically, the M&R recommends:

(1) Defendants' Motion be granted as to Count I against the Defendant Officers in their individual capacities;
(2) Defendants' Motion be denied without prejudice as to Count II against the Defendant Officers in their individual capacities and as to Count III against Defendant Taylor in his individual capacity;
(3) Defendants' Motion be denied as to Counts II, III, and VIII against the Defendant City; and
(4) Defendants' Motion be granted as to Counts IV through VIII "to the extent it generally seeks dismissal of Plaintiff's request for emotional distress damages on his ADA claims" or denied without prejudice "to the extent it requests dismissal of Plaintiff's ADA claims in their entirety."

Id. at 31–32. The Defendants object to recommendations (2), (3), and (4). Below, the Court reviews *de novo* each objection in turn.

---

[1] Where applicable, this Court refers to Defendant City of Gastonia as "the Defendant City"; Defendants Brooks and Taylor together as "the Defendant Officers"; the Gastonia Police Department as "GPD"; and the Defendants' Partial Motion to Dismiss as "the Defendants' Motion."

3

A. <u>The Court overrules the Defendants' objections as to Count II against the Defendant Officers and as to Count III against Defendant Taylor.</u>

The M&R concludes the Defendants' Motion should be denied without prejudice as to Count II against the Defendant Officers and as to Count III against Defendant Taylor. ECF No. 25 at 31. This Court agrees.

*1. Count II against the Defendant Officers*

As to Count II, the M&R reasons the Plaintiff "has stated a claim for excessive force to overcome qualified immunity" sufficient to survive at the motion to dismiss stage because "[f]urther development is needed to determine whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular force used and whether the right was clearly established." ECF No. 25 at 19–20.

The Defendants object for two reasons. First, the Defendants argue "the Magistrate Judge ignored the general precepts of qualified immunity based upon binding precedent[.]" ECF No. 27 at 9. Second, the Defendants contend[2] the provided body camera footage conclusively establishes the Defendant Officers' use of force was reasonable. <u>Id.</u> at 13.

---

[2] On this point, defense counsel writes: "Defendants are at a loss as to what further discovery is needed for this Court to review with regards to the amount of force utilized by the Officers in response to the Plaintiff's conduct." ECF No. 27 at 9. In other places, counsel avers Magistrate Judge Rodriguez "blatantly ignored" the law and the Defendants' arguments [<u>id.</u> at 9, 15]; asks this Court to discount "the Plaintiff's flowery description" of the events underlying this case [<u>id.</u> at 12]; and implies Magistrate Judge Rodriguez did not review the footage at all [<u>see id.</u> at 13].

The Court finds defense counsel's tone and accusations are inappropriate. Both the West Virginia and the North Carolina Rules of Professional Conduct require attorneys to advocate zealously "while maintaining a professional, courteous and civil attitude toward all persons involved in the legal system." <u>E.g.</u>, N.C. RULES OF PROF'L CONDUCT, Preamble. The examples above are not only condescending to opposing counsel, they attack the professional integrity of a sitting United States Magistrate Judge. Going forward, counsel would do well to focus his arguments on the merits and remember that candor and civility will serve his clients far better than manufactured incredulity and disrespect.

4

The Court disagrees. Beginning with the Defendants' first argument, the Court finds the M&R properly applied the qualified immunity analysis. To overcome qualified immunity, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Mays v. Sprinkle, 992 F.3d 295, 301 (4th Cir. 2021). It is within the Court's discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009).

As the M&R correctly stated, "[t]he Fourth Amendment prohibits police officers from 'using excessive force to seize a free citizen.'" Hupp v. Cook, 931 F.3d 307, 321 (4th Cir. 2019); see ECF No. 25 at 18. The M&R explained courts must ask "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." Id. at 321–22. Courts must also "consider several factors, including 'the severity of the crime at issue,' whether the 'suspect pose[d] an immediate threat to the safety of the officers or others,' and whether the suspect was 'actively resisting arrest or attempting to evade arrest by flight.'" Id. at 322 (quoting Graham v. Connor, 490 U.S. at 396) (alteration in original) (citation omitted). The Fourth Circuit also instructs courts to "consider the extent of the plaintiff's injuries." Id. (citation omitted).

Here, the Plaintiff avers the Defendant Officers "demanded that [the Plaintiff] provide his identification but did not specify any particular form of identification." ECF No. 1 ¶ 40. The Plaintiff states he provided the Defendant Officers with his federal veteran identification card, from which they could readily identify him. Id. ¶¶ 41–42. The Plaintiff

5

alleges Defendant Brooks ordered the Plaintiff to instead present his state identification. Id. ¶ 43. As the Plaintiff attempted to comply with that order, he contends Defendant Taylor "grabbed [the Plaintiff], told him he was under arrest for resisting an officer, and, with [Defendant] Brooks, forced [the Plaintiff] against the patrol car." Id. ¶ 49. According to the Plaintiff, "Defendant Brooks then took over effectuating the arrest, first pressing [the Plaintiff] into the car and then, after about a minute, throwing him onto the pavement" despite the Plaintiff's lack of physical resistance to Defendant Brooks's restraints. Id. ¶¶ 50–51.

The Court finds the Plaintiff plausibly alleges he was not resisting arrest and that the force used exceeded any existing threats or the severity of the alleged crime, panhandling. Additionally, the Court agrees with the M&R that the Plaintiff has a clearly established constitutional right to be free from excessive force during an arrest. Hupp, 931 F.3d at 321. Thus, the Court holds the M&R properly applied the qualified immunity analysis and that the Plaintiff's allegations overcome qualified immunity at this stage, but this does not preclude the Defendants from raising this argument at a later stage. See id. at 322.

Turning to the Defendants' second argument, they are incorrect that the provided body camera footage conclusively establishes the Defendant Officers' use of force was reasonable. While the footage may contradict to some degree the Plaintiff's allegation that he did not physically resist arrest, any such contradiction does not meet the high bar of rendering the Plaintiff's allegations "so utterly discredited . . . that no reasonable jury could have believed him." See Scott v. Harris, 550 U.S. 372, 380 (2007). To quote the GPD, "each person may see [the body cam video] differently." ECF No. 1-1 at 31.

6

Case 3:23-cv-00396-GMG-SCR    Document 31    Filed 07/28/25    Page 6 of 14

Thus, the Court declines to conclusively determine the reasonableness of the Defendant Officers' use of force at this early stage of the case, which is designed only to test the sufficiency of the Complaint.[3] Accordingly, the Defendants' objections as to Count II against the Defendant Officers are overruled.

### 2. Count III against Defendant Taylor

As to Count III, the M&R explains the Plaintiff's unreasonable seizure claim and Defendant Taylor's qualified immunity defense "must be considered under a reasonable analysis, considering competing interests, including what if any threat or danger Sunshine posed during the interaction." ECF No. 25 at 23. The M&R reasons the Defendants' argument in favor of dismissal "relies entirely on Defendants' version of the facts, which contradict the facts in Plaintiff's Complaint." Id. at 22. Because the Court must accept the Complaint's allegations as true at this stage, the M&R concludes the Defendants' argument must be rejected, subject to later consideration as appropriate. Id. at 23.

The Defendants object, arguing the M&R fails to adequately address the second prong of the qualified immunity analysis: whether the allegedly violated right was clearly established. ECF No. 27 at 14–15. Specifically, the Defendants contend Defendant Taylor is entitled to qualified immunity because there is no clearly established "Fourth Amendment right against the use of non-lethal force to restrain an unrestrained service animal." Id.

The Court finds the M&R properly applied the second prong of the qualified immunity analysis to Count III. The right allegedly violated here is the Plaintiff's right against an unreasonable seizure of his property—i.e., his dog. See Altman v. City of High

---

[3] A Complaint, the Court notes, the Defendant City appears to have repeatedly and publicly goaded the Plaintiff into filing. See, e.g., ECF No. 1 ¶¶ 137–38; ECF No. 1-1 at 40–41, 43.

Point, 330 F.3d 194 (4th Cir. 2003); see also Ray v. Roane, 948 F.3d 222 (4th Cir. 2020). The Defendants attempt to narrow the right by adding factors such as non-lethal force and whether the dog was restrained. However, these factors are not applicable to the definition of the right. Rather, they are factual issues that inform the question of whether the alleged seizure of the dog was reasonable. See Altman, 330 F.3d at 205–06.

At this stage, the Court must accept the facts as pleaded by the Plaintiff. Thus, as above, the Court finds the Plaintiff's present allegations overcome qualified immunity, but this does not preclude the Defendants from raising this argument at a later stage. See Hupp, 931 F.3d at 322. Accordingly, the Defendants' objections as to Count III against Defendant Taylor are overruled.

B. The Court overrules the Defendants' objections as to Counts II, III, and VIII against the Defendant City.[4]

The M&R recommends the Defendants' Motion be denied as to Counts II, III, and VIII against the Defendant City. These counts consist of claims under 42 U.S.C. § 1983—excessive force, unreasonable seizure, and First Amendment retaliation, respectively. The M&R reasons the Complaint contains allegations sufficient to, at this stage, satisfy the requirements of Monell v. Department of Social Services, 436 U.S. 658 (1978). ECF No. 25 at 25–26. Specifically, the M&R finds the Complaint adequately alleges excessive force, unreasonable seizure, and First Amendment retaliation fairly attributable to the Defendant City with a causal link to the Defendant City's alleged policy and custom of "hostility towards and unwarranted force during interactions with" homeless people. Id.

---

[4] Based on the conclusions above, this section assumes the actions of the Defendant Officers constitute constitutional violations.

8

The Defendants object. ECF No. 27 at 19–21. The Defendants first argue the excessive force and unreasonable seizure claims are based on a ratification theory under which the Defendant City approved of the Defendant Officers' actions afterward, evidenced by the GPD's social media posts. Id. at 19. The Defendants aver this theory necessarily fails because any post-facto approval of the Defendant Officers' actions could not have caused the actions. Id. (citing Franklin v. Charlotte, 64 F.4th 519, 536 (4th Cir. 2023)). Second, the Defendants contend the First Amendment retaliation claim consists of scattershot accusations that do not rise to the requisite level of a widespread practice or custom. Id. at 20–21.

The Court agrees with the M&R. To successfully allege Monell liability, a plaintiff must establish three elements: (1) "a constitutional harm that stems from the acts of a municipal employee taken in furtherance of some municipal policy or custom"; (2) "that the policy's creation is fairly attributable to the municipality"; and (3) "an affirmative causal link between the policy or custom, and the particular injury suffered by the plaintiff." Washington v. Balt. Police Dep't, 457 F. Supp. 3d 520, 532 (D. Md. 2020) (cleaned up) (internal citations omitted).

A policy or custom sufficient for Monell liability may arise through one of four ways:

(1) an express policy, such as a written ordinance or regulation; (2) the decisions of a person with final policymaking authority; (3) an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (cleaned up). "No matter which of these paths [to show a policy or custom that] a plaintiff takes, the 'official policy' itself must

'inflict' the alleged injury for the municipality to be liable under § 1983." Franklin, 64 F.4th at 536 (quoting Monell, 436 U.S. at 694) (alterations in original omitted).

Here, the Court finds the excessive force and unreasonable seizure claims are not necessarily based on a ratification theory. Instead, as the Plaintiff highlights, the Complaint's reference to the GPD's social media posts "is an evidentiary point: By stating that Defendants acted pursuant to GPD policy, the GPD representative responsible for the Facebook statement provided evidence tending to confirm the existence of such a policy and the causal link between that policy and Defendants' constitutional violations." ECF No. 28 at 13 n.6. Thus, the question is not whether the social media posts can support a ratification theory, but whether the social media posts—along with all the other allegations in the Complaint—are sufficient to meet the elements of Monell.

The Court holds the Complaint sufficiently alleges the elements of Monell. The Complaint avers the Defendant Officers' actions were "just one example" of the Defendant City's "longstanding policy, practice, or custom of mistreatment of people experiencing homelessness." ECF No. 1 at 38. As evidence of the origins of such a policy, practice, or custom, the Complaint cites a 1990 federal investigation into allegations of systemic abuse of homeless people by the Defendant City, which resulted in the convictions of several officers. Id.

The Complaint goes on to allege that such abuses, and the attitudes motivating them, persist to this day. Id. at 39. In support, the Complaint proffers: (1) the Defendant City has targeted homeless people by using zoning regulations to prohibit a local church from providing overnight shelter; and (2) that it was the Defendant City's official goal in fiscal year 2022 to "find a solution that would deter the homeless from congregating in

10

Case 3:23-cv-00396-GMG-SCR    Document 31    Filed 07/28/25    Page 10 of 14

open areas that are visible." Id. at 39–40. Further, the Complaint argues the Defendant City "aggressively arrests and seeks prolonged detention of people experiencing homelessness for trivial or fabricated offenses," corroborating Defendant Taylor's statements to the Plaintiff that officers "received directions" to focus on homeless people and that smiling and/or offering money to homeless people was "against policy." Id. at 7, 40. Finally, the Complaint points to hundreds of the GPD's social media posts that the Plaintiff alleges were each intended "to harass, bully, and defame" him when he began speaking publicly. Id. at 22–37.

These "brief, but non-conclusory, allegations . . . contain sufficient factual content to survive a motion to dismiss." Owens v. Balt. City State's Att'y's Off., 767 F.3d 379, 403–04 (4th Cir. 2014) (cleaned up). While "prevailing on the merits of a Monell claim is difficult, simply alleging such a claim is, by definition, easier." Id. at 403. The Complaint's "recitation of facts need not be particularly detailed, and the chance of success need not be particularly high." Id. (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Indeed, a "plaintiff fails to state a claim only when he offers 'labels and conclusions' or formulaically recites the elements of his § 1983 cause of action," a bar which the Complaint here exceeds. Id.

Additionally, while the GPD's social media posts occurred after the incident at issue here, their contents and sheer volume present a unique and unprecedented set of facts that give the Court pause. These posts from the GPD's official Facebook account include vigorous criticisms of the Plaintiff, as well as repeated statements that the Defendant Officers did not violate any policy, and they number in the hundreds over the course of approximately 18 months. The GPD's posts must also be considered alongside,

11

for example, the alleged posts of state magistrate judge Mark Oakes. ECF No. 1 at 17–18. For this Court, significant red flags are raised where a state magistrate chooses to call members of the public "sheep" and "low information loud mouths," or tell them to "go change [their] diaper,"—especially when that magistrate does so in reaction to public sentiment about a case still pending before him. Altogether, these posts constitute evidence not only of an official policy of hostility toward homeless people, but of the animus likely to underpin such a policy.

For all those reasons, the Court holds the Complaint adequately alleges excessive force, unreasonable seizure, and First Amendment retaliation fairly attributable to the Defendant City with a causal link to the Defendant City's alleged policy and custom of hostility towards and unwarranted force during interactions with homeless people. Accordingly, the Defendants' objections as to Counts II, III, and VIII against the Defendant City are overruled.

### C. The Court finds the Defendants' requested clarification as to emotional distress damages is appropriate, but the Court declines to so categorize any specific damages at this stage.

The M&R recommends the Defendants' Motion be granted as to Counts IV through VIII "to the extent it generally seeks dismissal of Plaintiff's request for emotional distress damages on his ADA claims" or denied without prejudice "to the extent it requests dismissal of Plaintiff's ADA claims in their entirety." ECF No. 25 at 30.

The Defendants proffer two objections. ECF No. 27 at 21–23. First, the Defendants request this Court clarify that emotional distress damages are unavailable on the Plaintiff's ADA and Rehabilitation Act claims in Counts IV through VIII, "rather than simply 'unavailable on Plaintiff's ADA claims.'" Id. at 22. Second, the Defendants aver the M&R

erred in not expressly categorizing "medical expenses related to Plaintiff's emotional distress" as emotional distress damages. Id. at 22–23 (citing Cummings v. Premier Rehab Keller, P.L.L.C., 596 U.S. 212 (2022)).

The Plaintiff replies he has previously conceded that emotional distress damages are unavailable on Counts IV through VIII. See ECF No. 28 at 16. Next, the Plaintiff argues the M&R correctly recognized that factual disputes remain as to which damages are properly categorized as emotional distress damages. Id. at 16–17.

Upon review and consideration, the Court finds the clarification sought by the Defendants' first objection is appropriate. The Defendants' first objection is therefore sustained. For the reasons cited by the Defendants, conceded by the Plaintiff, and supported by the analysis in the M&R, this Court holds emotional distress damages are unavailable on the Plaintiff's ADA and Rehabilitation Act claims in Counts IV through VIII.

As to the Defendants' second objection, the Court declines to categorize medical expenses as emotional distress damages at this stage. Categorizing damages requires factual determinations that are not appropriate at this stage, such as the nature and extent of the Plaintiff's alleged injuries. See B.R. v. F.C.S.B., 718 F. Supp. 504, 514–16 (E.D. Va. 2024) (holding a defendant failed to meet its summary judgment burden because the plaintiff's evidence that damages stemming from PTSD were physical, and therefore permissible under Cummings, created a factual dispute). Accordingly, the Court finds the Defendants' argument is premature, and the Defendants' second objection is overruled.

D. The Court finds no good cause to schedule a status conference at this time.

On May 7, 2025, the Plaintiff filed a request for a status conference. ECF No. 29. Therein, the Plaintiff seeks to "confer with the Court about the history and status of this

13

Case 3:23-cv-00396-GMG-SCR    Document 31    Filed 07/28/25    Page 13 of 14

litigation and the pending motion to dismiss, . . . which has been fully briefed since November 1, 2023," in light of the case's recent reassignment to this Court. Id. The Defendants filed a response in opposition, arguing such a conference would unnecessarily "expend judicial economy or party resources[.]" ECF No. 30 at 2.

The Court finds no good cause to schedule a status conference at this time. Following entry of this Order, the Court will enter its routine First Order and Notice Regarding Discovery, placing this matter on a concrete timeline toward resolution.

### III.  CONCLUSION

For all the above reasons, the Court holds:

(1) the Defendants' objections as to Count II against the Defendant Officers are **OVERRULED**;
(2) the Defendants' objections as to Count III against Defendant Taylor are **OVERRULED**;
(3) the Defendants' objections as to Counts II, III, and VIII against the Defendant City are **OVERRULED**;
(4) the Defendants' objection seeking clarification as to emotional distress damages is **SUSTAINED**; and
(5) the Defendants' objection as to the categorization of medical expenses is **OVERRULED**.

Consistent therewith, it is hereby **ORDERED** that:

(1) Magistrate Judge Rodriguez's M&R [ECF No. 25] is **ADOPTED**, with the clarification that emotional distress damages are unavailable on the Plaintiff's ADA and Rehabilitation Act claims in Counts IV through VIII;
(2) the Defendants' Partial Motion to Dismiss [ECF No. 15] is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Defendants' Motion is **GRANTED** as to Count I against the Defendant Officers in their individual capacities. The Defendants' Motion is otherwise **DENIED**; and
(3) the Plaintiff's request for a status conference [ECF No. 29] is **DENIED**.

The Clerk of Court is **DIRECTED** to transmit copies of this Order to all counsel of record herein.

**DATED**: July 28, 2025

GINA M. GROH
UNITED STATES DISTRICT JUDGE